*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2011-049

MAY TERM, 2011

| | |
|---|---|
| In re C.G., Juvenile | APPEALED FROM: |
| | |
| | Superior Court, Windham Unit, Family Division |
| | DOCKET NO. 111-10-09 Wmjv |
| | Trial Judge: Thomas A. Zonay |

In the above-entitled cause, the Clerk will enter:

Mother appeals the family division's order terminating her residual parental rights with respect to her daughter, C.G. We affirm.

C.G. was born in January 2009. Based on reports concerning the parents' mental health issues, domestic violence, neglectful behavior, and lack of stable housing, the family division of the superior court granted the Department for Children and Families (DCF) emergency custody of C.G. on October 1, 2009. Two weeks later, the parents departed for Florida. Mother returned to Vermont on December 17, 2009, but DCF declined to reinstate her visitation with C.G. until a forensic evaluation was completed because of concerns over mother's unaddressed mental heath issues and her inconsistent presence in C.G.'s life. In mid-March 2010, the parents stipulated to C.G. being a child in need of care or supervision. At an uncontested hearing in May 2010, the family division approved a disposition plan providing for continued DCF custody and concurrent goals of reunification or adoption.

In July 2010, DCF filed a petition to terminate the parents' residual parental rights. Following a one-day hearing in November 2010, the family division entered an order terminating both mother's and the father's parental rights. The court found that neither parent had made any progress—despite DCF's best efforts to help them—toward engaging in services and addressing issues related to parent education, mental health treatment, and recognition of their past neglect and shortcomings concerning their ability to parent C.G. The court based its termination order on parents' lack of any progress toward reunification, mother's unaddressed significant mental health issues that posed a risk to C.G.'s safety, the lack of any relationship between the parents and C.G. for over one year, and the unlikelihood that either parent would be able to resume their parental duties within a reasonable period of time.

Only mother appeals the termination order. She does not contest any of the court's findings or conclusions regarding the merits of the termination order, but rather argues that (1) because her brief testimony at the end of the termination hearing was essentially a voluntary relinquishment of her parental rights, the court erred in failing to ascertain whether she relinquished those rights knowingly and intelligently; and (2) the court erroneously concluded that it lacked the legal authority to allow mother a "good-bye" visit before terminating her

parental rights. We conclude that neither argument presents a legitimate basis for disturbing the court's termination order.

After the State presented its evidence at the termination hearing, the court granted the request of mother's attorney to speak to mother alone for a few minutes. Upon returning to the courtroom, mother's attorney put mother on the stand and asked just one question—whether she had any request "should" the court terminate her parental rights. Mother responded that she would like the court to grant her a "good-bye" visit with C.G. if the court decided to terminate her parental rights. Before concluding the hearing, the court stated that it did not have the legal authority to grant a "good-bye" visit if it issued a termination order because such an order would become effective immediately.

Mother first argues that, in effect, she voluntarily relinquished her parental rights with her brief testimony at the termination hearing, and thus the court should have made sure that her relinquishment of those rights was knowing and intelligent. We find no error. Mother did not voluntarily relinquish her parental rights, but rather asked the court for a "good-bye" visit "should" the court grant DCF's termination petition. Indeed, the court's termination order was not based on any voluntary relinquishment of parental rights. Rather, the court terminated mother's rights on the merits of DCF's petition following a lengthy review of all of the relevant statutory criteria, which led the court to conclude that mother had made no progress toward reunification and would be unable to resume her parental duties within a reasonable period of time. In effect, mother is asking us to reverse the trial court's order because the court did not confirm that mother knowingly and intelligently declined to present evidence at the termination hearing. No such colloquy is required. Thus, there is no error.

In any event, mother fails to show any prejudice resulting from the alleged omission on the court's part, in that she neither challenges any of the court's findings or conclusions—which overwhelmingly support its termination order—nor points to any evidence that would have raised doubts concerning the termination of her parental rights. See V.R.C.P. 61 ("[N]o error or defect in any ruling or order or in anything done or omitted by the court . . . is ground for . . . disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice.") Similarly, with regard to mother's second argument, even assuming that the court could have fashioned an order that would have allowed mother a final visit with C.G. before the termination order took effect, mother fails to explain why the court's refusal to issue such an order must or should result in reversal of a termination order that is overwhelmingly supported by the evidence. See id.

Affirmed.

BY THE COURT:

_____
Denise R. Johnson, Associate Justice


_____
Marilyn S. Skoglund, Associate Justice


_____
Brian L. Burgess, Associate Justice

2